J. A15044/15

2015 PA Super 212

RYAN FELL, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
340 ASSOCIATES, LLC AND :
334 KAYLA, INC. :
:
Appellees : No. 3009 EDA 2014

Appeal from the Judgment Entered December 17, 2014
In the Court of Common Pleas of Chester County
Civil Division No(s).: 11-10055

BEFORE: BOWES, MUNDY, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.: **FILED OCTOBER 05, 2015**

Appellant, Ryan Fell, appeals from the judgment entered in the

Chester County Court of Common Pleas following a two-day bench trial and

the denial of her motion for post-trial relief. Appellant challenges the trial

court's determination that Appellees, 340 Associates, LLC, and 334 Kayla,

Inc., did not fraudulently transfer 340 Associates' sole asset—a liquor

license—to avoid collection on a verdict entered in Appellant's favor in a

separate Dram Shop Act[1] action. We hold the trial court erred by holding

334 Kayla appropriately compensated 340 Associates for the liquor license

under Section 5104(b)(8) of the Pennsylvania Uniform Fraudulent Transfer

---

* Former Justice specially assigned to the Superior Court.

[1] 47 P.S. § 4-493.

Act[2] ("PUFTA"). We vacate the judgment in favor of Appellees, reverse the order denying Appellant's post-trial motion, and remand with instructions to enter judgment in favor of Appellant and for further proceedings as set forth below.

We adopt the trial court's findings of fact set forth at paragraphs one through twenty-four, twenty-seven, twenty-eight, thirty-one, and thirty-two, as set forth below:

1. Defendant 340 Associates LLC is a limited liability company formed on June 8, 2001 ("340 Associates").

2. 340 Associates is a single purpose entity formed to purchase and hold a liquor license.

3. On March 25, 2002, 340 Associates purchased Liquor License R11807 ("the License"). The purchase was approved by the Pennsylvania Liquor Control Board ("PLCB") for the purpose of operating a bar and restaurant.

4. Since 2003[,] the sole members of 340 Associates have been Michael Andrew McCool and Raymond Christian McCool, who manage 340 Associates' operations.

5. In December 2004, 340 Associates entered into a management agreement with Nazario and Rosa Tapia to manage a bar/restaurant known as The Famous Mexican Restaurant, located at 334-340 East Lincoln Highway, Coatesville ("the Property"). Mr. Tapia was approved by the PLCB to manage the License.

6. As a result of problems at The Famous Mexican Restaurant, the property was placed in the Nuisance Bar Program by the PLCB and the License[e] was required to

_____

[2] 12 Pa.C.S. §§ 5101-5110.

enter into a Conditional Licensing Agreement, which required, inter alia, alcohol management training, cooperation with police, a prohibition on weapons, and monitoring outside of the bar.

7. At the end of 2005, McCool Properties, LLC ("McCool Properties") purchased the Property. Thereafter, the Tapias paid rent to McCool Properties.

8. McCool Properties is a separate entity from 340 Associates. The members of McCool Properties are Michael Andrew McCool, Raymond Christian McCool and Raymond R. McCool, now deceased.

9. On January 4, 2006, 340 Associates began to market the License for sale, using a multiple listings service and a sign posted at The Famous Mexican Restaurant.

10. On March 15, 2007, [Appellant] was injured by a car driven by Omar Villaiva-Martinez.

11. In the fall of 2007, The Famous Mexican Restaurant ceased operations and closed, whereupon the License was put into safe-keeping with the PLCB.

12. On November 8, 2007, [Appellant] filed suit against Villaiva-Martinez and others, including 340 Associates. [Appellant] alleged that Villaiva-Martinez had been served alcoholic beverages while visibly intoxicated prior to causing the car accident in which she was injured. No liquor liability insurance was in place at the time [Appellant] was injured.

13. Through May, 2009, 340 Associates did not receive[ ] any offers for the License.

14. In June, 2009, Jose Diaz saw the For Sale sign at the property where The Famous Mexican Restaurant had been located and subsequently offered to purchase the License for $75,000.

15. In June, 2009[,] 334 Kayla, Inc., a corporation formed by Diaz ("Kayla"), and 340 Associates entered into

an Agreement of Sale for the License at the agreed upon price of $75,000.

16. In June, 2009[,] [334] Kayla entered into a lease with McCool Properties for the property formerly occupied by The Famous Mexican Restaurant ("the Lease").

17. The Lease is for an initial five-year term with an option to extend for two additional five-year terms. At the Lease's expiration, [334] Kayla is required to sell the License to McCool Properties or its assignee for market value. In addition, the License is security for the Lease. Therefore, [334] Kayla is restricted and may not sell, transfer, pledge or assign the License during the term of the Lease.

18. On December 21, 2009[,] the PLCB approved the transfer of the License to [334] Kayla.

19. In February, 2010, [334] Kayla and 340 Associates closed on the sale of the License with 340 Associates taking back a note for the full purchase price ("the Note").

20. On August 18, 2010[,] a jury rendered a verdict in favor of [Appellant] in the amount of Six Million Eight Hundred Thousand Dollars ($6,800,000) and against ten defendants, including 340 Associates.

21. [Appellant] commenced this action on September 14, 2011 under the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S.A. §§5101-5110.

22. On July 3, 2012[, 334] Kayla began to make payments to 340 Associates under the Note for the purchase of the License. At the time of hearing, [334] Kayla's payments totaled $13,342.72.

23. Under the terms of the Note, payments for the purchase of the License were to have 1.) started one month following closing, 2.) continued for 60 consecutive months and 3.) been made in the amount of $1,415.35 per month.

24. 340 Associates deferred payment on the Note until [334] Kayla had got the restaurant/bar open and on its feet.

\* \* \*

27. At all times [334] Kayla has been controlled by Diaz and Nereida Jaquez, neither of whom have any interest in 340 Associates or McCool Properties.

28. Kayla and its shareholders are not insiders or parties related to 340 Associates or McCool Properties.

\* \* \*

31. The transfer of the License from 340 Associates to Kayla is a matter of public record.

32. A bench trial was held on May 21-22, 2014.

Trial Ct. Op., 5/28/14, at 1-3.

340 Associates' only asset was the liquor license, which was offered for sale at $375,000. Appellant's Trial Ex. 6. (N.T. Dep. of Raymond C. McCool, 8/8/11, at 6); Appellant's Trial Ex. 14. 340 Associates sold the license to 334 Kayla pursuant to the below terms:

> **2. Consideration.** [340 Associates] agrees to accept and [334 Kayla] agrees to pay for the License the total sum of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS.

> **3. Terms.** The aforesaid consideration of $75,000.00 shall be in the form of a loan from [340 Associates] to [334 Kayla], which loan shall be repaid within 5 years, together with interest at the rate of five percent (5%) simple per annum based on a 5 year pay-out, in 60 successive, equal monthly installments of $1,415.35 each. The first monthly payment shall be due and payable one (1) month subsequent to the date of closing and the remaining payments shall be due on the same day of each successive month thereafter until fully paid. [334 Kayla]

shall have the right to prepay the loan in whole or in part at any time without penalty.

(a) The loan shall be evidenced and secured by a judgment note executed by [334 Kayla], which note may be recorded only in the event of a default. The loan shall further be secured by a security agreement together with UCC-1 financing statements granting unto [340 Associates] a first lien position security interest in the License and the corporate stock of [334 Kayla]. A pledge of all of the capital stock of [334 Kayla], together with the resignations of all the officers and directors of said corporation shall also be provided to [340 Associates]. The loan documents shall provide that no default may be declared by [340 Associates] unless [340 Associates] shall first have sent written notice specifying the nature of the default and providing [334 Kayla] with thirty (30) days thereafter within which to cure the default. [340 Associates] may assign its interests in the loan to its nominee.

(b) **[Pennsylvania Liquor Control Board] Note.** As required by the PLCB, [334 Kayla] shall execute a judgment note in the amount of $75,000.00, representing the purchase price, payable to [340 Associates] on demand, which note shall be held in escrow by counsel for [334 Kayla], but subject always to the terms and conditions as contained herein.

Appellant's Trial Ex. 1, Agreement of Sale of Liquor License, 6/16/09, at 2-3.

Appellant filed an amended complaint in equity requesting a mandatory injunction compelling 334 Kayla to return the license at issue to 340 Associates or the court to order the public sale of the license, with proceeds paid to Appellant. Appellant's Amended Compl., 11/17/12, at 3 (unpaginated). After a bench trial, the trial court held that Appellant established the existence of the elements of fraud at 12 Pa.C.S. §

5104(b)(4), (5), (9), and (10).[3]  The trial court, however, identified two

mitigating factors as follows:

> 1.) 340 Associates first marketed the License for sale in January, 2006, fifteen months before Fell was injured, and continually marketed the License for sale thereafter, and
>
> 2.) 340 Associates took back the Note, on which payments are being made, in exchange for the License.

Trial Ct. Op. at 5.  The trial court ultimately entered judgment in favor of

Appellees.

Appellant filed a timely post-trial motion requesting judgment

notwithstanding the verdict or a new trial, which the court denied on October

1, 2014.  Appellant timely appealed and timely filed a court-ordered

Pa.R.A.P. 1925(b) statement raising seventeen issues.

Appellant raises the following three issues in her brief:

> Whether the trial court's findings of facts are unsupported by substantial, competent evidence and whether it erred as a matter of law when it found that 340 Associates' conveyance was not fraudulent under Section 5104 of [PUFTA] because 340 Associates, or its operating members[,] the McCool Brothers, did not possess actual intent to hinder, delay or defraud a creditor when it conveyed the subject liquor license to Kayla?
>
> Whether the trial court abused its discretion and erred as a matter of law when it found that 340 Associates' conveyance of the subject license did not violate Section 5104(a)(2) and Section 5105 of the [PUFTA]?

---

[3] The statute is reproduced, **infra**.

Whether the trial court's findings of fact are unsupported by substantial, competent evidence and whether it erred as a matter of law when it found that Diaz and/or Kayla was an innocent and good faith purchaser of the liquor license?

Appellant's Brief at 6.

We summarize Appellant's arguments in support of all of her issues, as they are interrelated.[4] She contends that because Appellees "retained possession or control" of the license under 12 Pa.C.S. § 5104(b)(2), she presented an additional element of actual fraud. Similarly, Appellant maintains that she established a badge of fraud per Section 5104(b)(8), because the judgment note received by 340 Associates does not constitute "value" under PUFTA. Assuming, however, the judgment note constituted "value" under PUFTA, Appellant insists the trial court erred by valuing the note at $75,000. As a corollary, Appellant questions the trial court's valuation of the license at $75,000. Appellant asserts that 340 Associates

---

[4] Appellant, although raising three issues, presents four arguments, thus violating Pa.R.A.P. 2119(a), which mandates that "argument shall be divided into as many parts as there are questions to be argued." *See* Pa.R.A.P. 2119(a). We decline to quash. *See PHH Mortg. Corp. v. Powell*, 100 A.3d 611, 615 (Pa. Super. 2014) (refusing to quash appeal despite numerous violations of appellate briefing rules); *see also Commonwealth v. Briggs*, 608 Pa. 430, 516, 12 A.3d 291, 343 (2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.").

knew it would incur debts beyond its ability to pay and thus she demonstrated a fraudulent transfer under Section 5104(a)(2)(ii). Lastly, Appellant summarily opines that 334 Kayla is not an innocent and good faith purchaser for value.[5]

340 Associates counters that Appellant improperly equates 340 Associates with non-party McCool Properties and there is no action to pierce the corporate veil. 340 Associates insists that McCool Properties' right to purchase the license does not mean McCool Properties retained possession or control over the license. 340 Associates note that Appellees were the only parties to introduce evidence of the liquor license's value and, therefore, the trial court correctly held the license was sold, exchanged, or transferred for a judgment note of reasonably equivalent value. 340 Associates also contends that 334 Kayla is an innocent good faith purchaser for value.

334 Kayla disputes that it engaged in fraud. It points out that Appellant abandoned on appeal any argument that it was an "insider."[6] 334 Kayla maintains that a requirement that it sell the license to McCool Properties at the end of the lease does not establish fraud. It contends

---

[5] Appellant concedes 334 Kayla is not an "insider" as defined by PUFTA. **See** Appellant's Brief at 18 n.6 ("[Appellant] no longer asserts the argument that the transfer was to an insider").

[6] **See** Appellant's Brief at 18 n.6.

there is "no legal support for the proposition that the value of a note is based on the ability of a purchaser to pay the note," as value can also include a "mere 'opportunity' to receive an economic benefit in the future." 334 Kayla's Brief at 9 (quoting *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 212 (3d Cir. 2006)).[7] 334 Kayla also counters that the trial court found credible testimony that it did not have to make immediate payments on the note and that it began repaying the note when it was feasible. After careful review, we hold Appellant is entitled to relief.

The standard of review is deferential:

> In prior matters involving review of alleged fraudulent conveyances, we have stated that our standard of review

---

[7] We acknowledge the following:

> [F]ederal court decisions do not control the determinations of the Superior Court. Our law clearly states that, absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved. When the Third Circuit has spoken on a federal issue, the ultimate answer to which has not yet been provided by the United States Supreme Court, it is appropriate for this Court to follow Third Circuit precedent in preference to that of other jurisdictions. Whenever possible, Pennsylvania state courts follow the Third Circuit so that litigants do not improperly "walk across the street" to achieve a different result in federal court than would be obtained in state court.

*NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012) (citation omitted); *accord Parr v. Ford Motor Co.*, 109 A.3d 682, 693 n.8 (Pa. Super. 2014) (*en banc*), *appeal denied*, 46 EAL 2015 (Pa. May 27, 2015).

of a decree in equity is particularly limited and that such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. The findings of the chancellor will not be reversed unless it appears the chancellor clearly abused the court's discretion or committed an error of law. The test is not whether we would have reached the same result on the evidence presented, but whether the chancellor's conclusion can reasonably be drawn from the evidence.

*Mid Penn Bank v. Farhat*, 74 A.3d 149, 153 (Pa. Super. 2013) (citation omitted).

Generally, PUFTA permits a creditor to void a transfer or obligation upon direct or indirect proof of fraud. *See* 12 Pa.C.S. §§ 5101-5110. Because direct proof of fraud is rarely available, Section 5104 identifies factors—"badges of fraud"—that a court may consider in ascertaining whether the debtor executed a voidable transfer:

**§ 5104. Transfers fraudulent as to present and future creditors**

**(a) General rule.**—A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor; *or*

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

**(b) Certain factors.**—In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;[8]

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;[9]

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

---

[8] PUFTA did not define "insider" but asserted "'insider' should be interpreted in a common-sense way, consistent with Comments (5) and (6) to 12 Pa.C.S. § 5104." 12 Pa.C.S. § 5101 cmt. (12).

[9] For example, "the distribution of a corporation's assets, leaving it incapable of discharging its debts, is fraudulent in the eyes of the law." **Heaney v. Riddle**, 343 Pa. 453, 458, 23 A.2d 456, 458 (1942).

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa.C.S. § 5104 (emphasis added). Courts review the factors qualitatively, and not quantitatively. **See** 12 Pa.C.S. § 5104 cmt. (5).[10] The plain language of the statute also permits a court to find actual fraud even in the absence of any of the enumerated factors. **In re C.F. Foods, L.P.**, 280 B.R. 103, 109 (Bankr. E.D. Pa. 2002).

As noted above, in ascertaining whether a transfer is voidable as to present and future creditors under Section 5104(a)(1), a court may consider whether "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred." 12 Pa.C.S. § 5104(b)(8). "Value" is defined at 12 Pa.C.S. § 5103 as follows:

### § 5103. Value

---

[10] "Proof of the existence of any one or more of the factors enumerated in subsection (b) may be relevant evidence as to the debtor's actual intent but does not create a presumption that the debtor has made a fraudulent transfer or incurred a fraudulent obligation." 12 Pa.C.S. § 5104 cmt. (5); **see also In re Arbogast.**, 466 B.R. 287, 313 (Bankr. W.D. Pa. 2012) (holding absence of fraudulent transfer despite satisfying six of eleven Section 5104 factors).

> **(a) General rule.**—Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

12 Pa.C.S. § 5103(a).[11]

> The definition in subsection (a) is not exclusive. "Value" is to be determined in light of the purpose of this chapter to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors. Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition.

12 Pa.C.S. § 5103 cmt. (2).

In **Farhat**, this Court examined whether the creditor established a fraudulent transfer based on the following facts:

> Zene is the son of Saheira and Ismail Farhat. Zene is a sole proprietor of a business that builds houses . . . .

> On June 15, 2007, Zene met with [Mid Penn Bank's] loan officer . . . who advanced a $165,000.00 unsecured line of credit to Zene (hereinafter "loan").

> On August 3, 2007, Saheira transferred Lot 19 of the Preliminary/Final Subdivision Plan of Pheasant Hill Phase I, Wayne Township, Dauphin County, Pennsylvania (hereinafter "the property") to Zene for $1.00. As a result, Zene became the record owner of the property from August 2007 through January 15, 2010. Construction of a house on the property started in December of 2007 and was completed in June of 2008.

---

[11] The definition of "value" set forth at 12 Pa.C.S. § 5103(b) "does not apply to an action under 12 Pa.C.S. § 5104(a)(1) . . . ." 12 Pa.C.S. § 5103 cmt. (5).

Meanwhile, Zene was paying timely interest payments on the loan he received in June of 2007. Near the end of 2009, Dennis Sweigart (hereinafter "Mr. Sweigart"), a commercial loan officer for [Mid Penn Bank], contacted Zene. . . . Zene and Mr. Sweigart met on December 23, 2009. Mr. Sweigart informed Zene that he needed to begin paying on the [principal] and suggested Zene use the property to secure the loan. Zene refused to provide security and stated he would continue to pay interest. Additionally, Zene testified he informed Mr. Sweigart the property belonged to his father. Mr. Sweigart informed Zene that if he did not provide collateral [Mid Penn Bank] would file judgment against him.

Thereafter, Terrence Michael Monteverde (hereinafter "Mr. Monteverde"), senior vice president and chief credit officer, contacted Zene to instruct that he either provide security for the loan or pay the loan in full, pursuant to the loan documents. Again, Zene refused to provide security for the loan. Zene ceased making payments on the loan after December 30, 2009.

By deed dated January 15, 2010, the property was transferred back to Saheira for $1.00. In May of 2010, Saheira sold the property for $275,000.00.

. . . Moreover, on January 29, 2010, Zene obtained a home equity loan in the amount of $50,000.00 secured by a mortgage on his personal residence.

*Farhat*, 74 A.3d at 151 (brackets and footnotes omitted).

Mid Penn Bank sued Zene and Saheira under PUFTA; the trial court entered judgment adverse to Mid Penn Bank. *Id.* at 152. The trial court identified the following facts establishing actual intent to defraud: Zene transferred the deed to his mother, an insider, *see* 12 Pa.C.S. § 5104(b)(1), the transfer occurred after a threatened lawsuit, *see* 12 Pa.C.S. § 5104(b)(4), and the transfer occurred two weeks before Zene incurred a

substantial debt.   *See* 12 Pa.C.S. § 5104(b)(10); *Farhat*, 74 A.3d at 154.

The trial court, however, held that Mid Penn Bank failed to establish the

factors set forth at Subsections (2), (5), (7), (8), and (9), reasoning that (i)

Zene's transfer of the deed was not intended to "to hinder, delay, or

defraud" Mid Penn Bank, (ii) Zene "never controlled or had any financial

stake in the property even during the period when he was the record owner

of the land," (iii) Zene, although buying the property for one dollar, Saheira

financed the development and Zene did not profit from the later sale, and

(iv) the sale did not make Zene insolvent as he was timely paying his bills

and "had no effect on [his] financial position." *Farhat*, 74 A.3d at 154-56.

The Superior Court disagreed with the trial court's reasoning. *Id.* at

154.   The *Farhat* Court initially noted that the deed granted Zene "every

legal and equitable interest that Saheira held" between August 3, 2007

through January 15, 2010. *Id.* at 155.   Moreover, the record established

that during that timeframe, Zene identified the property as his asset. *Id.*

Finally, the record established Zene's debt to Mid Penn Bank greatly

exceeded the equity interest he had in the property and, two weeks after

transferring the deed, he borrowed $50,000 secured by a second mortgage

on his home. *Id.* at 156.   In sum, the *Farhat* Court held the record also

established the badges of fraud set forth at Subsections (2), (5), (7), (8),

and (9).   The Superior Court thus held that the trial court erred as Zene, by

transferring the property, "intended to hinder, delay, or defraud [the a]ppellant's efforts to collect a debt within the meaning of § 5104." *Id.*

Instantly, similar to the trial court in *Farhat*, the trial court also held Appellant established the elements of fraud at 12 Pa.C.S. § 5104(b)(4) and (10), which, respectively, are that the transfer was made after 340 Associates was sued and the transfer occurred "shortly"[12] before it incurred a substantial debt. The instant trial court also held Appellant demonstrated the indicia of fraud set forth at Subsection (5), "the transfer was of substantially all the debtor's assets," and Subsection (9), "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." *See* 12 Pa.C.S. § 5104(b)(5), (9).

We reject, however, the trial court's determination that the value of the consideration received by 340 Associates was reasonably equivalent to the value of the liquor license transferred to 334 Kayla. *See* 12 Pa.C.S. § 5104(b)(8). 334 Kayla, in fact, borrowed $75,000 from 340 Associates in order to buy the license and did not start repaying the loan until July 3, 2012. *See* Trial Ct. Op., 5/28/14, at 3; Appellant's Trial Ex. 1. Thus, 334 Kayla did not transfer any property to 340 Associates in exchange for the license. *See* 12 Pa.C.S. § 5103(a). 334 Kayla did not secure or otherwise satisfy a preexisting debt in exchange for the license. *See id.* Because the

---

[12] The license was transferred eight months before the verdict was rendered.

purpose of PUFTA is to protect 340 Associates' estate from being depleted to the prejudice of its unsecured creditors, **see** 12 Pa.C.S. § 5103 cmt. (2), 340 Associates' only asset was the liquor license, and 340 Associates lent the purchase price of the license to 334 Kayla, we disagree with the trial court that the record established 334 Kayla transferred property or otherwise satisfied an antecedent debt.  **See** 12 Pa.C.S. §§ 5103(a), 5104(b)(8); **Farhat**, 74 A.3d at 154.  To paraphrase our Supreme Court, the distribution of 340 Associates' only asset—leaving it incapable of discharging its debts—in conjunction with the other badges of fraud found by the trial court, establishes fraud as a matter of law.  **See Heaney**, 343 Pa. at 458, 23 A.2d at 458; **Farhat**, 74 A.3d at 154-56.  Having discerned an error of law, we vacate the judgment in favor of Appellees, reverse the order denying Appellant's post-trial motion, remand with instructions to enter judgment in favor of Appellant, and remand for further proceedings to resolve which relief Appellant receives.[13]

Judgment vacated.  Order denying post-trial motion reversed.  Case remanded with instructions.  Jurisdiction relinquished.

---

[13] Because we have granted relief on Appellant's first issue, we need not address her remaining issues.  **See Siegal v. Stefanyszyn**, 718 A.2d 1274, 1277 n.6 (Pa. Super. 1998).  We note Appellant, in her complaint, requested alternative forms of relief: (1) a mandatory injunction compelling 334 Kayla to return the license to 340 Associates or (2) the court to order the public sale of the license, with proceeds paid to Appellant.  **See** Appellant's Amended Compl., 11/17/12, at 3 (unpaginated).

J. A15044/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2015