J-A20001-16

2017 PA Super 6

| CHARLES A. KNOLL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| EUSTACE O. UKU, YALE DEVELOPMENT & CONTRACTING, INC. AND EXICO, INC. | |
| Appellee | No. 1181 WDA 2015 |

Appeal from the Order Entered July 2, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): G.D. 12-007435

BEFORE: BOWES, STABILE AND MUSMANNO, JJ.

OPINION BY BOWES, J.:                                              **FILED JANUARY 12, 2017**

Charles A. Knoll, Jr. appeals from the July 2, 2015 order denying his petition for supplementary relief in aid of execution. We reverse.

The following pertinent facts were contained in this Court's memorandum addressing the direct appeal in this litigation:

> In 2004, Uku and Knoll created Yale, a construction company, which worked on various projects, including The Meadows Racetrack and Casino ("Meadows"), the Carpenter's Training Facility, and the Consol Energy Center. Uku was the president of Yale, and Knoll was the vice president of Yale. Pursuant to an agreement, Knoll and Uku split the profits of Yale, with Knoll receiving 49% and Uku receiving 51%. The agreement also stated that Uku and Knoll could only receive funds from Yale as a distribution of profit. Between 2008 and 2012, Uku withdrew or received $59,983.00 from Yale's various accounts. Between 2008 and 2012, Exico, a corporation of which Uku is the president and sole shareholder, withdrew

$228,565.35 from Yale's various accounts. Knoll received no payments during this period.

On April 27, 2012, Knoll filed a Complaint against Yale and Uku, alleging that Knoll was due his share of profits from Yale. Yale and Uku filed an Answer, denying Knoll's allegations. On June 10, 2013, Knoll filed an Amended Complaint against the Appellants, alleging that profits from Yale were improperly diverted to Uku and Exico. [Yale and Uku] filed an Answer and New Matter to the Amended Complaint. Following a non-jury trial and the filing of proposed findings of fact and conclusions of law by both parties, the trial court issued a verdict in favor of Knoll. [Yale and Uku] filed a Motion for Post-Trial Relief, which the trial court denied. Subsequently, a Judgment in the amount of $175,882.09 was entered in favor of Knoll and against [Yale and Uku].

*Knoll v. Uku*, 136 A.3d 1033 (Pa.Super. 2016) (unpublished memorandum at 1-2). This Court affirmed the judgment in Knoll's favor.

Knoll thereafter instituted garnishment proceedings in order to collect his judgment, and Shelley Fant, Uku's wife, was named as a garnishee. On December 18, 2014, Knoll filed a petition for supplementary relief in aid of execution under Pa.R.C.P. 3118.[1] Therein, Knoll sought to void under the

_____

[1] That rule states in relevant part:

(a) On petition of the plaintiff, after notice and hearing, the court in which a judgment has been entered may, before or after the issuance of a writ of execution, enter an order against any party or person

. . . .

(5) directing that property of the defendant which has been removed from the county or concealed for

*(Footnote Continued Next Page)*

Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. §§ 5101-5110 ("PUFTA"), Uku's transfer of three parcels of real estate that he owned individually into the names of himself and Fant.

The transfers in question occurred on February 9, 2010, and concerned these properties then owned by Uku: 1) 241 Fourth Avenue, Pittsburgh; 2) a one-story rental home located at 8260 Chaske Street, Verona; and 3) 214 Farmington Road, Pittsburgh, a residential dwelling. During discovery, it was established that the Fourth Avenue property had been sold. Simultaneously with those transfers by Uku, Fant placed three properties, which she solely owned, in her and Uku's names as tenancies by the entireties. The properties that Fant transferred from her name and into joint names included a residence on 821 Old Mill Road, Pittsburgh, and two rental homes located on Third Street and Ninth Street, respectively, in Clairton. Each of the six parcels of real estate was transferred without consideration.

_(Footnote Continued)_ ⸻

        the purpose of avoiding execution shall be delivered to the sheriff or made available for execution; and

        (6) granting such other relief as may be deemed necessary and appropriate.

Pa.R.C.P. 3118

Uku and Fant filed answers to Knoll's petition in aid of execution, and both were subsequently deposed. During her deposition, Fant testified that the property transfers were for the purpose of estate planning. She also reported that she remained in complete charge of the three properties that previously belonged to her while Uku remained in total control of the Chaske Street and Farmingham Road real estate. Fant acknowledged that she had not executed and thus was not financially responsible under the mortgages for the Chaske Street and Farmington Road properties.

Uku refused to answer any probative questions during his deposition and instead exercised his right against self-incrimination under the Fifth Amendment. At the time, Uku was facing criminal charges related to his businesses. Not only did Uku refuse to answer questions regarding the three property transfers, but he declined to respond to any inquiries about his finances.

On July 2, 2015, the trial court denied Knoll's petition for supplementary relief in aid of execution. Thereafter, Knoll filed this timely appeal, wherein he raises the following issues for our review:

> A. Did Uku conduct fraudulent transfers when, after stealing $137,010.35, Uku then transferred all of his individually owned real property into his wife's name for no consideration, rendering himself insolvent and unable to repay the amounts he stole, while Uku continued to control those properties after the transfers and then continued stealing an additional $151,538.00?

B.    Did the lower court abuse its discretion when it refused to render an adverse inference against Appellees despite the fact that Uku refused to provide any testimony or produce any documents regarding the property transfers at issue?

Appellant's Brief at 3.

Knoll first claims that the trial court abused its discretion and erroneously applied PUFTA when it decided that the transfers in question were not fraudulent.  The following standard of review applies:

In prior matters involving review of alleged fraudulent conveyances, we have stated that our standard of review of a decree in equity is particularly limited and that such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. The findings of the [judge] will not be reversed unless it appears the [judge] clearly abused the court's discretion or committed an error of law. The test is not whether we would have reached the same result on the evidence presented, but whether the [judge's] conclusion can reasonably be drawn from the evidence.

*Fell v. 340 Assocs., LLC,* 125 A.3d 75, 81 (Pa.Super. 2015) (citation omitted).

Herein, Knoll argues that the transfers are invalid under PUFTA on three bases: they were made with actual fraud, as outlined in 12 Pa.C.S. § 5104(a)(1); they were constructively fraudulent, as set forth in 12 Pa.C.S. § 5104(2); and they must automatically be set aside since the language of 12 Pa.C.S. § 5105 applies to the transfers.  We first examine § 5104, which states:

**(a) General rule.**—A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation

- 5 -

was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

**(b) Certain factors.**—In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa.C.S. § 5104. Section 5104(a)(1) nullifies a transfer committed with actual fraud. Section 5104(b) "identifies factors—'badges of fraud'—that a court may consider in ascertaining whether the debtor executed a voidable transfer" based upon the existence of actual intent to defraud a creditor. *Fell*, *supra* at 82. The § 5104(b) fraud factors are reviewed qualitatively rather than quantitatively. *Id*.

A transfer is set aside as fraudulent under § 5105 under the following circumstances:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

12 Pa.C.S. § 5105. Thus, § 5105 applies if (1) the creditor's claim arose before the transfer, (2) the debtor made the transfer without receiving a

reasonably equivalent value in exchange for the transfer, and (3) the debtor became insolvent as a result of the transfer. ***See Gallaher v. Riddle***, 850 A.2d 748 (Pa.Super. 2004).

While Knoll invokes § 5104(a), § 5104(b), and § 5105, we conclude that the record herein establishes that § 5105 applies and invalidate the transfers herein on that basis. Initially, we observe that the trial court found that Uku became insolvent as a result of the transfers. It did not consider § 5105 since it also concluded that, even though Uku became insolvent as a result of the transfers, Uku's three properties were exchanged for items of reasonably equivalent value, *i.e.*, Fant's three properties. We first examine the issue of insolvency, as that decision was in Knoll's favor and is not disputed by Uku on appeal.

> **(a) General rule.**— A debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets.
>
> **(b) Presumption of insolvency.**— A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent. This presumption shall impose on the party against whom the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence.

12 Pa.C.S. § 5102.

We conclude that the record evidence supported the trial court's finding that Uku became insolvent within the meaning of § 5102 after he deeded his three individually owned properties from his name and into those

of himself and Fant. While Uku refused to answer any questions about his finances, Fant was frank about Uku's situation. Fant admitted that her husband had no assets in his sole name. Specifically, Fant was asked a series of questions as to the assets Uku owned, including bank accounts, stocks bonds, real estate or retirement funds. She reported, "He has nothing." Deposition of Shelley Fant, 1/12/15, at 70. She stated that Uku had some tangible personal property of nominal value.

The PUFTA defines an "asset" as, "[p]roperty of a debtor," but also specifically excludes "an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." 12 Pa.C.S. § 5101(b). Thus, prior to the transfers, Uku had three assets, 241 Fourth Avenue, Pittsburgh, 8260 Chaske Street, Verona; and 3214 Farmington Road. On February 9, 2010, he placed them into entireties property and thereafter, he owned no assets, as defined by PUFTA. The three properties transferred by Fant to Uku were likewise entireties property and were not assets of Uku under PUTFA. Hence, Uku became insolvent as a result of the transfers in question.

We now ascertain if Knoll was a creditor whose claim arose prior to the transfers. A creditor means a "person who has a claim," and a "claim" is "[a] right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 12 Pa.C.S. § 5101(b).

Even though Uku had not yet been sued by Knoll, Uku began to siphon money from Yale, 49% of which he owed to Knoll, beginning in 2008 and continuing until 2012. By 2010, when the transfers in question occurred, Uku owed Knoll money due to his improper allocation of money from Yale to himself without giving Knoll his share. Thus, Knoll was a creditor as he had a claim in the form of a right to payment of funds from Uku prior to the February 9, 2010 transfers. Uku was fully aware of this fact when he deeded his property over to Fant and himself, rendering it immune from execution as to any debtor to whom Uku alone owed money.

Finally, we examine whether the value of the consideration received by Uku was reasonably equivalent to the value of the asset transferred. In this connection, the trial court opined that Uku received consideration in the form of the three properties Fant transferred to her and Uku as tenancies by the entireties. We concur with Knoll that the trial court committed legal error in this respect. The definition of "value" is as follows:

> **(a) General rule.**—Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

12 Pa.C.S. § 5103(a). However,

> The definition in subsection (a) is not exclusive. "Value" is to be determined in light of the purpose of this chapter to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors. **Consideration having no utility**

>**from a creditor's viewpoint does not satisfy the statutory definition**.

*Fell*, *supra* at 82 (citing 12 Pa.C.S. § 5103 comment 2 (emphasis added). A transfer of property from Fant to Uku and herself as entireties property had not a scintilla of value to any creditor of Uku. On the other hand, Uku immunized his real estate from execution for his debts by placing his wife's name on the deeds.

Equally important is the fact that, at her deposition, Fant admitted that the three properties that she transferred into Uku's name had absolutely no value. As noted, Fant transferred property on Third Street, Ninth Street, and Old Mill Road into entireties property in exchange for the three properties then separately owned by Uku. At her deposition, Fant was asked whether she knew "the approximate value of the Third Street property?" Deposition of Shelley Fant, 1/12/15, at 78. She responded, "I think it might be about $8,000. There's a mortgage on there for more than that." *Id*. As to the Ninth Street property, Fant also admitted that it was worth about $8,000 but had a mortgage on it for more than its worth. *Id*. When questioned about the Old Mill Road real estate, Fant replied, "The Old Mill Road property is probably worth $700,000, and there are two mortgages, and it also secures a PNC commercial loan that I have, and there's also an IRS lien on it, so that pretty much takes up the $700,000." *Id*. Fant thus

admitted that she transferred three properties with no monetary value whatsoever to Uku on February 9, 2010.

We find decisions rendered under the prior Fraudulent Conveyances Act particular instructive herein. We first note that § 5105 is "derived from § 4 of the Uniform Fraudulent Conveyance Act," which is the enactment that PUFTA supplanted. 12 Pa.C.S. § 5105, comment 1. Section four of Uniform Fraudulent Conveyance Act stated, "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." 39 Pa.S. § 354 (repealed).

Under the present iteration of the same concept in § 5105, there is the additional requirement that the creditor's claim must have arisen prior to the transfer. Although it may be present, the intent to defraud is not a necessary aspect of the operability of § 5105. In **Gallaher**, **supra**, we applied the provisions of § 5105 after the tripartite test set forth therein was satisfied, and we did not examine the debtor's intent behind making the transfer in question. Under section 4 of the prior Fraudulent Conveyance Act, a spouse's conveyance of his or her separate property into entireties property could be set aside. We observed in **Garden State Standardbred Sales Co. v. Seese**, 611 A.2d 1239, 1243 (Pa.Super. 1992), that it was settled that in Pennsylvania, "entireties property is unavailable to satisfy the

claims of the creditor of only one of the tenants," but that "when a spouse conveys individual property to a tenancy by the entireties in fraud of creditors, the creditor may nevertheless execute against the property so conveyed."

In *First National Bank of Marietta v. Hoffines*, 239 A.2d 458 (Pa. 1968), the Court invalidated under section 4 of the former Fraudulent Conveyance Act two conveyances of realty by a debtor who had owned the properties in his individual name and placed them into the names of himself and his wife as tenants by the entireties. It noted that the conveyances rendered the debtor insolvent and that they were made for a stated consideration of only one dollar. *See also Stinner v. Stinner*, 446 A.2d 651 (Pa.Super. 1982) (former wife owed money could garnish husband's wages placed in entireties account with his new wife).

Also instructive is *In re Wettach*, 811 F.3d 99 (3rd Cir. 2016), wherein the Third Circuit Court of Appeals affirmed an award to a bankruptcy trustee of various transfers made by the debtor of his separate earnings into an entireties account. In 2000, Mr. Wettach was found personally liable for unpaid rent under a lease that his partnership, which had been dissolved, made with the owner of the partnership's office space. Mr. Wettach joined another law firm and placed his earnings from that firm into a checking account that he owned with his wife. He claimed that the checking account held by the entireties with his wife was exempt property under federal

bankruptcy law and applicable Pennsylvania state law, both of which provide that property in which the debtor holds an interest as a tenant by the entirety cannot be executed upon by his debtors.

After Wettach declared bankruptcy, the trustee in bankruptcy initiated adversarial proceedings claiming that the deposits were recoverable and could be placed in the bankruptcy estate as fraudulent transfers. The trustee took the position that the wage transfers were fraudulent since they effectively prevented the debtor's wages from being used to satisfy his debts by converting the wages into entireties property. Therein, the trustee claimed that the wage deposits were fraudulent under 12 Pa.C.S. § 5104(a)(2) and § 5105. The bankruptcy court awarded the trustee approximately $430,000 plus interest from the entireties bank account. The Wettachs appealed to the district court, which affirmed. The Third Circuit likewise upheld the bankruptcy court's ruling.

The Bankruptcy Code grants the bankruptcy trustee the power to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1). As noted the trustee took the position that the transfers were voidable under PUTFA §§5104(a)(2)(ii) and 5105. The Wettachs did not contest either that he was insolvent or that the bankruptcy claim arose prior to the transfers. They did maintain that the transfers were for reasonably equivalent value and thereby

not fraudulent since the funds in the entireties account were used to pay for reasonable and necessary household expenses.

The **Wettach** Court held that, once the person challenging the transfer demonstrates by a preponderance of the evidence that the statutory elements for application of §§ 5104(a)(2)(ii) and 5105 are met, the burden shifts to the debtor to produce countervailing proof of the absence of those factors. Since the Wettachs did not provide documentary proof, which was within their possession, that the money in the entireties account was spent on reasonable and necessary household expenses, the Third Circuit rejected their argument on appeal. The Court thus ruled that a direct deposit of a debtor's individual wages into an entireties account can constitute a fraudulent transfer of assets under the PUFTA.

The record establishes that all three conditions for application of § 5105 are present herein. Thus, Uku's transfers of the properties from his name into entireties property were fraudulent under § 5105.[2] We therefore direct the trial court to void the February 9, 2010 transfers by Uku of 8260 Chaske Street, Verona, and 214 Farmington Road, Pittsburgh.

Order reversed. Case remanded. Jurisdiction relinquished.

---

[2] We thus need not address Knoll's second averment on appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/12/2017</u>