J. A32009/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BLUE HAVEN POOLS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| SKIPPACK BUILDING CORPORATION, | : | |
| AND BS TRUST, EB TRUST, JE TRUST | : | |
| AND SJ TRUST, GARNISHEES | : | |
| | : | |
| | : | No. 1226 EDA 2015 |

Appeal from the Order Entered March 23, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 05-26165

BEFORE: DUBOW, RANSOM, AND PLATT,[*] JJ.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 03, 2017**

Appellant, Blue Haven Pools, appeals from the March 23, 2015 Order denying its Post-Trial Motion.[1] After careful review, we affirm on the basis of the trial court's well-reasoned Opinion.

---

[*] Retired Senior Judge Assigned to the Superior Court.

[1] The trial court's docket reflects that on January 23, 2017, Judgment was entered against Appellant and in favor of Appellees. Because the trial court's March 23, 2015 Order denying Appellant's Post-trial Motion was later reduced to Judgment, and was the court's final pronouncement on the matter, it is properly appealable. **See Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511, 513 (Pa. Super. 1995) (*en banc*) (holding that, although the appeal was taken from an order denying post-trial relief, "jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment.").

The trial court's Pa.R.A.P. 1925(a) Opinion includes a thorough and complete narrative of the lengthy factual and procedural history of this case, which we adopt for purposes of this appeal. *See* Trial Court Opinion, dated 7/15/16, at 2-11. While we will not go into exhaustive detail here, some of the relevant facts are as follows.

On November 1, 2005, Appellant filed a civil action for breach of contract against Appellee Skippack Building Corporation ("Skippack"), citing Skippack's failure to make payments due on a construction contract. During the pendency of the civil action, Skippack distributed nearly half a million dollars in funds to its shareholders (BS Trust, EB Trust, JE Trust, and SJ Trust, or "Garnishees"), leaving Skippack with only $375 in assets. A portion of the funds transferred were initially classified as "loans to shareholders" in Skippack's 2008 and 2009 tax returns, but by 2010, Skippack had reclassified the loans as distributions in tax filings.

On November 1, 2010, Appellant received a Judgment in its favor against Appellee Skippack in the amount of $74,131.73, which was later reassessed at $94,754.10. Since that date, Appellant has been involved in extensive litigation trying to enforce the Judgment through garnishment proceedings and, eventually, an attempt to void the transfer to Garnishees as fraudulent. At issue in the instant appeal is the procedural posture by which Appellant attempted to void the fraudulent transfer, as well as the characterization of the transfers as a distribution rather than a loan.

Specifically, Appellant raises five issues on appeal:

1. Whether the trial [c]ourt committed an abuse of discretion or error of law in failing to enter judgment against Garnishees, BS Trust, EB Trust, JE Trust[,] and SJ Trust (the Trusts), jointly and severally, in the amount of $94,754.10.

[2.] Whether the trial [c]ourt committed an abuse of discretion or error of law in failing to find that Skippack Building Corporation's "Loans to shareholders" (that is, loans to each of the Trusts) in the amount of $231,573.00 were subject to execution, when [Skippack] and the Trusts admitted, and when the unrefuted and uncontradicted [*sic*] evidence was, that they were "assets" and "receivables" of the corporation, and were never repaid.

[3.] Whether the trial [c]ourt committed an abuse of discretion or error of law in finding that it was without the authority to determine or adjudicate conflicting rights to property in the possession of third parties, including alleged fraudulent transfers, when the [c]ourt was duly authorized, and subsequently conducted, "an independent full dress," "plenary" trial on the merits.

[4.] Whether the trial [c]ourt committed an abuse of discretion or error of law in finding that the distributions of cash made by Skippack Building Corporation to shareholders (that is, distributions to each of the Trusts), in the aggregate amount of $464,568.00, were fraudulent conveyances, when the unrefuted and uncontradicted [*sic*] evidence was that they effectively stripped the corporation of any assets.

5. Whether the trial [c]ourt committed an abuse of discretion or error of law in failing to find that the elimination or writing off of "Loans to shareholders" (that is, loans to each of the Trusts), by "distributing" them to shareholders, as if no money were owed, were fraudulent conveyances.

Appellant's Brief at 4 (reordered for ease of disposition).

This Court's scope and standard of review on appeal following a bench trial is well-settled:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating and Cooling LLC*, 100 A.3d 660, 664-65 (Pa. Super. 2014) (citation and quotation omitted). The trial court, as the finder of fact, is free to believe "all, part[,] or none of the evidence presented." *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. 2006). "Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder." *Id.* (citation and internal quotation marks omitted).

As a preliminary matter, although Appellant lists five issues in his Statement of Questions Involved, they are better understood as two issues. In fact, the argument portion of Appellant's Brief is broken into only two sections, and the trial court addressed Appellant's five issues as only two distinct arguments. Similarly, we will combine Appellant's issues into the two underlying arguments.

First, Appellant argues that the trial court erred in finding that the Trusts lacked any assets of Skippack subject to execution, averring that at least a portion of the distributions made to Garnishees was in fact a loan. Appellant's Brief at 26-36. The Honorable Thomas P. Rogers has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's claim. After a careful review of the parties' arguments and the record, we affirm on the basis of that Opinion, which found that "Garnishees owed no money to and possessed no property of [Appellee] Skippack subject to execution when the Montgomery County Sheriff's Department served the writs of execution on August 19, 2011, or thereafter." Trial Court Opinion at 13-17.

Second, Appellant avers that Appellee Skippack's distributions to Garnishees were fraudulent transfers, and that the trial court erred in concluding that it was precluded from adjudicating the merits of a fraudulent transfer claim in a garnishment proceeding brought pursuant to Pa.R.C.P. No. 3118. Appellant's Brief at 36-47. Judge Rogers' Opinion includes a comprehensive, thorough, and well-reasoned discussion of this claim, with citations to the record and relevant case law. After a careful review of the parties' arguments, and the record, we affirm on the basis of that Opinion, which recognized binding precedent from our Supreme Court holding that, absent a waiver by the parties, a trial court may not properly adjudicate a fraudulent transfer claim in a garnishment proceeding, and a plaintiff must

instead bring a separate action in equity. Trial Court Opinion at 17-25 (citing, *inter alia*, **Greater Val. Terminal Corp. v. Goodman**, 202 A.2d 89 (1964)). In the instant case, Appellee Skippack and Garnishees did not waive their objection to the trial court adjudicating the fraudulent transfer claim; accordingly, the trial court properly concluded that it was without authority to hear the matter.

Our analysis, and that of the trial court's well-written Opinion, is unaffected by this Court's recent holding in **Knoll v. Uku**, ___ A.3d ___, 2017 PA Super 6 (filed January 12, 2017). In **Knoll**, this Court reviewed the merits of a fraudulent transfer claim that was brought pursuant to Pa.R.C.P. No. 3118. There, the parties did not object to the trial court hearing the fraudulent transfer claim within a Rule 3118 proceeding, and on appeal, neither party asked this Court to consider whether a fraudulent transfer claim may properly be brought in a Rule 3118 proceeding over the objections of the garnishees.

The instant case, however, is distinguishable from **Knoll**. Appellee Skippack and Garnishees did, in fact, object to the trial court adjudicating the fraudulent transfer claim in a Rule 3118 proceeding. As discussed *supra*, our review confirms that the trial court properly concluded that it was without authority to hear the matter.[2]

---

[2] At oral argument, Appellant raised a third theory of relief, arguing that the fraudulent transfer claim was raised under Pa.R.C.P. No. 3147, and not

J. A32009/16

The parties are directed to attach a copy of the trial court's July 15, 2016 Opinion to all future filings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2017

---

pursuant to Pa.R.C.P. No. 3118. Appellant has waived this argument by failing to develop it in its Brief to this Court. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). Moreover, Rule 3147 applies **after** a court has entered judgment for a plaintiff against a garnishee upon pleadings or after trial; nothing in Rule 3147 authorizes a plaintiff to file pleadings or request a trial. *See* Pa.R.C.P. No. 3147 ("If the court enters judgment for the plaintiff and against the garnishee upon pleadings or after trial, the judgment shall be for the property of the defendant found to be in the garnishee's possession, but no money judgment entered against the garnishee shall exceed the amount of the judgment of the plaintiff against the defendant together with interest and costs.")

- 7 -

## THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CIVIL ACTION

| | | |
|---|---|---|
| BLUE HAVEN POOLS | : | SUPERIOR COURT |
| | : | NO. 1226 EDA 2015 |
| v. | : | |
| | : | |
| SKIPPACK BUILDING CORPORATION | : | |
| and | : | |
| BS TRUST, EB TRUST, JE TRUST and | : | TRIAL COURT |
| SJ TRUST, Garnishees | : | NO. 2005-26165 |

ROGERS, J.                                   JULY 15, 2016

***OPINION***



2005-26165-0216  7 15 2016 2:44 PM   = 10872631
Opinion
Rcpt#Z2807402  Fee:$0.00
Mark Levy - MontCo Prothonotary

### I.   INTRODUCTION

Appellant Blue Haven Pools ("Blue Haven") has appealed to the Superior Court of Pennsylvania ("Superior Court") from this court's March 23, 2015 order denying its Post-Trial Motions.[1] For the reasons set forth below, the undersigned respectfully requests that the Superior Court affirm the judgment.

---

[1] An order denying post-trial relief is interlocutory and generally not appealable. *See McEwing v. Lititz Mutual Insurance Co.*, 77 A.3d 639, 645 (Pa.Super. 2013) (citations omitted); *Prime Medica Associates v. Valley Forge Insurance Company*, 970 A.2d 1149, 1154 n.6 (Pa.Super. 2009) (citations omitted). However, the Prothonotary entered final judgment in this matter and sent the Rule 236 Notice on March 23, 2015. Therefore, this appeal may proceed.

## II. FACTUAL AND PROCEDURAL HISTORY

The relevant facts and procedural history underlying this appeal are as follows. In March of 2005, Skippack Building Corporation ("Skippack" or "Appellee") as the general contractor subcontracted with Blue Haven for the construction of a hotel pool at Normandy Farms Hotel and Conference Center for a total of $50,250.00. (Silow, J. Decision, docketed 11/1/10, at 1). The contract required that Skippack pay Blue Haven five percent (5%) up front, thirty percent (30%) after completing excavation on May 12, 2005, twenty percent (20%) after finishing the pool's steel reinforcement on May 23, 2005, forty percent (40%) after installing the pool's concrete shell on May 27, 2005, and then the last five percent (5%) after completing the pool's coating on July 12, 2005. (Id.).

Skippack paid Blue Haven the first five percent ($2,512.50), but Appellee did not make any payments on May 12, 2005 May 23, 2005 or May 27, 2005. (Id. at 1-2). Skippack cited problems with the pool construction, which Blue Haven attempted to remedy. On the final date, July 12, 2005, Skippack paid Blue Haven only two amounts, $10,963.00 and $10,000.00, leaving an unpaid balance of $26,774.50. (Id. at 2). As a result, Blue Haven completed only ninety-five percent (95%) of the hotel pool before abandoning the project. (Id.).

Blue Haven filed a civil action for breach of contract against Skippack on November 1, 2005. In 2006, Skippack distributed

approximately $200,000.00 in funds to its shareholders. (Notes of Testimony Trial 3/6/14 ("N.T."), at 50). On April 17, 2008, an arbitration panel found in favor of Blue Haven in the amount of $16,377.00. (Arbitration Award, docketed 4/21/08). On May 15, 2008, Skippack filed an appeal from the Arbitration Award.

On December 22, 2008, Skippack distributed a total of $464,568.92 to shareholders BS Trust, EB Trust, JE Trust, and SJ Trust ("Garnishees" or collectively as "Appellees"). (N.T. at 27). On Skippack's 2008 and 2009 tax returns, Skippack characterized $231,573.00 of that total distribution as "loans to shareholders". (*Id.* at 28, 32). On Skippack's 2010 tax return, Appellee reclassified the "loans to shareholders" as "distributions" and listed its assets as only $375.00. (*Id.* at 35).

Following a bench trial, as a result of Skippack's appeal from the arbitration award, the Honorable Gary S. Silow ruled in favor of Blue Haven in the amount of $74,131.73 as follows: $24,262.00 for the contract, $31,459.51 in interest, and $18,410.22 for attorney's fees. (Silow, J. Decision, docketed November 1, 2010, at 3). Blue Haven conducted discovery in aid of execution and, on August 19, 2011, the Montgomery County Sheriff's Department served writs of execution and interrogatories on the four Garnishees, automatically attaching any property of Skippack in their possession. (Writ of Execution and Interrogatories, filed 8/17/11, Docket Entry Nos. 91-95).

3

Blue Haven filed a petition to reassess damages on November 21, 2011. By order dated February 29, 2012, the Honorable Lois E. Murphy reassessed the judgment owed to Blue Haven at $94,754.10. (Order, docketed 3/2/12). Blue Haven filed a Motion for Judgment against the Garnishees pursuant to Pa.R.C.P. 3147 ("Motion") on May 25, 2012. Therein, Blue Haven averred that Skippack had diverted funds to the Garnishees in 2006 and in 2008. In particular, Blue Haven focused on the $231,573.00 that Skippack had designated as "loans to shareholders" on its tax return in 2008 and reclassified as a "distribution" on its tax return in 2010. (Motion, filed 5/25/12, at 5-6, 9). Blue Haven noted that the 2010 tax return was dated August 24, 2011, a week after their deposition of Elmer Hansen, Jr., the President of Skippack, on August 17, 2011. (*Id.* at 9). Blue Haven requested judgment in its favor and against the Garnishees for $94,754.10 plus interest, costs and fees pursuant to Pa.R.C.P. 3147.

Skippack responded on September 17, 2012, with two main arguments in support of its position that Blue Haven's Motion should be denied. The first was that the designation of "loans to shareholders" in 2008 was for tax purposes only to recognize a negative basis until Skippack had resolved outstanding or anticipated transactions and that there was never an actual "loan". (Response, filed 9/17/12, at 4). Therefore, the Garnishees owed no monies to Skippack and thus had no

4

funds subject to garnishment. The second argument proffered was that even if Blue Haven was correct, which Skippack disputed, a court could not summarily determine conflicting rights or claims to property in the possession of third parties in a proceeding supplementary to execution. (*Id.* at 3-5). According to Skippack, Blue Haven had not filed an action for fraudulent conveyance and could not proceed with such a claim in a hearing designed to give supplementary relief in aid of execution. (*Id.*).

Following conferences on September 19, 2012, the Honorable S. Gerald Corso held Blue Haven's Motion in abeyance "pending resolution of procedural issues." (Order, docketed 9/21/12).[2] Following a telephone conference with counsel on October 12, 2012, Judge Murphy entered a case management order docketed on November 2, 2012, directing Blue Haven to serve amended garnishment interrogatories by November 12, 2012, and for the Garnishees to answer them by December 3, 2012. (Case Management Order, docketed 11/2/12). Judge Murphy also ordered the parties to complete" [a]ll discovery in connection with this garnishment proceeding" by April 3, 2013. (*Id.*). On November 12, 2012, Blue Haven served amended interrogatories on the Garnishees. ("Amended

---

[2] Unfortunately there is nothing of record which specifies what Judge Corso directed the parties to do to "[resolve] certain procedural issues" and Blue Haven has not provided the court with any written record from the conferences. Although the docket reflects that a court reporter was present, no transcript was ordered. (*See* Docket No. 150 indicating the presence of a court reporter).

Interrogatories in Attachment", Docket Entry Nos. 158-61).[3] The Garnishees filed answers to the amended interrogatories on December 3, 2012. (Answers to Interrogatories in Attachment and New Matter, Docket Entry Nos. 163-66). Appellees' singular paragraph under New Matter provided: "The entry on Line 7 in Skippack Corp's tax return represented an entry designed to clarify an income tax issue, rather than identify a transfer." (*Id.* at 7).

On March 6, 2014, the undersigned presided over a bench trial. Blue Haven sought judgment against the Garnishees based on evidence that the Garnishees owed a debt to Skippack that was subject to garnishment at the time Blue Haven had served the writs of execution on August 19, 2011. Alternatively, Blue Haven sought judgment based on its theory that Appellees had fraudulently transferred monies owed to Skippack by the Garnishees and proffered that the court was entitled to hear this evidence under Pa.R.C.P. 3118. (N.T. 5-7). Appellees argued that the court had the authority to adjudicate only whether the Garnishees were in possession of any of Skippack's property at the time the writs were served and not to decide Blue Haven's claims of fraudulent transfer within this garnishment proceeding. Blue Haven called David

---

[3] Although some of the twenty-four (24) Amended Interrogatories in Attachment made more specific inquiry into the loan to shareholders and distributions, Blue Haven continued to proceed in the matter under Pa.R.C.P. 3118 and Pa.R.C.P. 3144.

6

Sherman,[4] Appellees' corporate designee, as on cross as well as Blue Haven's expert Alan G. Bassman, CPA, ABV, CFF of Bassman, Laserow, Adelman & Weiss, PC certified public accountants.

Mr. Sherman testified as on cross that on December 22, 2008, Skippack made a cash distribution to the Garnishees in the aggregate amount of $464,568.00. However, on the corporation's 2008 tax return, $231,573.00 of that distribution was reclassified as loans to shareholders. (N.T. at 27-28). This left an amount for Total Assets of the corporation on the 2008 return of $232,308.00. (*Id.* at 29).[5] Mr. Sherman also testified, however, that there was never an actual loan. (*Id.* at 37-38).[6] Mr. Bassman testified that his review of the Skippack records and expert report revealed a distribution of $200,000 in 2006 and a distribution of $464,568.92 in 2008, but when Skippack Building filed its 2008 tax return they reclassified $231,573.00 of that amount as a loan to shareholders to avoid adverse tax consequences. (*Id.* at 50-51). Mr. Bassman opined that the "loan to shareholders had to be real in order to

---

[4] David Sherman is the Chief Financial Officer of Hanson Properties, Inc. and all of entities under the umbrella of Hanson Properties, including Skippack. Mr. Sherman is also a Vice President of Hanson Properties as well as Skippack. One of Mr. Sherman's responsibilities was to supervise the accounting work for the companies and to sign the tax returns for Skippack Building. (N.T. at 13,19).

[5] Counsel for Blue Haven noted that Skippack typically obtained extensions for the filing of its tax returns until September of the following year. (*Id.* at 31).

[6] The relevant tax returns for Skippack and the Garnishees were marked and admitted as P-51 through P-62. (N.T. at 41-42).

7

sustain the position that they took on the tax returns." Mr. Bassman also testified:

> You can't put it on a tax return and say this is only for IRS purposes and doesn't really exist. This is not a book tax difference. You have to defend this as an asset of the corporation if you're ever examined.
>
> And that this asset existed as of January 1, 2010, and had this -- had Skippack Building Corporation been paid back the $231,573 that it was owed by its shareholders per its books, then there would have been sufficient cash available to pay the judgment to Blue Haven Pools.

(*Id.* at 52). On cross examination, the following exchange with Mr. Bassman occurred:

> Q.  Let me ask you this question: You've now argued with me quite well that in 2010 this loan was repaid, correct?
>
> A.  Yes.
>
> Q.  I'm going to ask you to go to my exhibits, and I'm going to ask you to look at Exhibit 8. Let me know when you have it.
>
> A.  I have it.
>
> Q.  That's a writ of execution, is it not?
>
> A.  Yes.
>
> Q.  Before we discuss that, can you tell me one more time when this loan to shareholders that appeared on the tax return was repaid? What year?
>
> A.  Sometime in 2010.
>
> Q.  Okay. Now I'd like you to look at the writ of execution and I'd like you to just read the date that appears on that writ of execution down at the bottom left-hand side.

A. There's a date stamp of August 17, 2011.

Q. Based on your analysis and based on the tax returns and based on your testimony, on the day that writ of execution was served, how much money did the trusts owe Skippack?

A. Nothing.

(*Id.* at 69-70).

The undersigned bifurcated the trial on Blue Haven's petition for a reassessment of the judgment against Skippack to account for intervening attorneys' fees and costs. (N.T. at 93-96). Following Blue Haven's case-in-chief, Appellees moved for a compulsory nonsuit on Blue Haven's Motion for judgment against the Garnishees. (*Id.* at 96-101). The parties agreed to permit the court to defer the motion and allow the defense to proceed. (*Id.* at 102).

On direct examination Mr. Sherman explained the circumstances underlying the entries on the 2008 and 2010 tax returns. In simplest terms, it was Mr. Sherman's position that the tax return preparer reclassified $231,573.00 of the original $464,568.92 cash distribution to the Garnishees as a loan to shareholders on the 2008 tax return because of a potential issue with a distribution in excess of basis,[7] the entry resulted in no change to the corporation's tax obligations, Skippack does not pay federal taxes, and there never was a loan to shareholders outside

---

[7] According to Mr. Sherman, "Basis is essentially owner's equity, whatever. It's whatever someone has put in the company plus whatever earnings have [sic] been left in the company plus whatever was distributed." (N.T. at 110).

9

of what was reported on the tax balance sheet. (*Id.* at 107-11). Additionally, Mr. Sherman testified that he became aware of the loan to shareholders reported on the tax balance sheet, which was never on the corporation's books, and realized that there was no tax issue after the 2009 tax returns had already been prepared. (*Id.* at 111). He and his staff made the business decision not to amend the 2008 tax return or redo the 2009 tax return, both of which would have cost several thousand dollars without an impact on taxes but, rather, to write the "loan" off effective January 1, 2010, as a 2010 tax entry. (*Id.* at 111-12).

Paul Walter Pocalyko, CPA, CFE, CFF, a partner in the accounting firm of ParenteBeard, rendered expert testimony on behalf of Appellees. (*Id.* at 121-22). Mr. Pocalyko provided a basic explanation of accounting practices for construction contractors. (*Id.* at 127-130). Mr. Pocalyko testified concerning the difference between cash and distributions, explaining that one is when real money goes out (cash) and the others are things that are characterized for tax return purposes (distributions). (*Id.* at 130). In Mr. Pocalyko's review of the Skippack books and records, including the general ledgers, the financial documents supporting those ledgers, transactional information, trial balances and the reconciliation, he found no documents which created a true loan. (*Id.* at 132-34).

On November 13, 2014, the undersigned ruled in favor of Appellees in the garnishment action based in part on the testimony of Blue Haven's

own expert witness who stated that on August 19, 2011, when the Montgomery County Sheriff's Department served writs of execution on the Garnishees, the Garnishees owed no money to Skippack. (Decision, docketed 11/13/14, at 3-4). In addition, this court concluded that the Pennsylvania Rules relating to supplementary relief in aid of execution and the case law interpreting those rules do not provide the court with authorization to determine, or the parties to adjudicate, conflicting rights to property in the possession of third parties, including alleged fraudulent transfers. *See Greater Valley Terminal Corporation v. P.J. Goodman*, 415 Pa. 1, 202 A.2d 89 (1964); (*Id.* at 3).

On November 24, 2014, Blue Haven filed post-trial motions. The undersigned heard argument on January 26, 2015, and on March 23, 2015, the court denied Blue Haven's post-trial motions. (Order: Plaintiff's Post-Trial Motions to this Court's Decision, filed 3/23/15). On April 21, 2015, Blue Haven filed a notice of appeal. On April 23, 2015, the undersigned ordered Blue Haven to file a concise statement of errors complained of on appeal ("Statement") pursuant to Pa.R.A.Pa.1925(b). Blue Haven filed its Statement on May 13, 2015.

## III. ISSUES

Blue Haven raises the following issues on appeal:

1. Whether this Honorable Court committed an abuse of discretion or error of law in failing to enter judgment against

11

Garnishees, BS Trust, EB Trust, JE Trust and SJ Trust (the Trusts), jointly and severally, in the amount of $94,754.10.

2. Whether this Honorable Court committed an abuse of discretion or error of law in finding that it was without the authority to determine or adjudicate conflicting rights to property in the possession of third parties, including alleged fraudulent transfers, when the Court was duly authorized, and subsequently conducted, "an independent full dress," "plenary" trial on the merits.

3. Whether this Honorable Court committed an abuse of discretion or error of law in failing to find that Skippack Building Corporation's loans to shareholders (that is, loans to each of the Trusts) in the amount of $231,573.00 were subject to execution, when [Appellees] and Trusts admitted, and when the unrefuted and uncontradicted evidence was, that they were "assets" and "receivables" of the corporation, and were never repaid.

4. Whether this Honorable Court committed an abuse of discretion or error of law in failing to find that the distributions of cash made by Skippack Building Corporation to shareholders (that is, distributions to each of the Trusts), in the aggregate amount of $464,568.00, were fraudulent conveyances, when the unrefuted and uncontradicted evidence was that they effectively stripped the corporation of any assets.

5. Whether this Honorable Court committed an abuse of discretion or error of law in failing to find that the elimination or writing off of loans to shareholders (that is, loans to each of the Trusts), by "distributing" them to shareholders, as if no money were owed, were fraudulent conveyances.

(Blue Haven's Statement filed May 13, 2015).

## IV. DISCUSSION

Pennsylvania law provides that the trial court acts as the finder of fact in a bench trial "and may believe all, part or none of the evidence

presented." *Ruthrauff, Inc. v. Ravin, Incorporated*, 914 A.2d 880, 888 (Pa.Super. 2006) (citation omitted). "Issues of 'credibility and conflicts in evidence are for the trial court to resolve'". *Id.; accord Turney Media Fuel, Inc. v. Toll Brothers, Inc.*, 725 A.2d 836, 841 (Pa.Super. 1999) (citation omitted). The Superior Court's review on appeal following a bench trial is guided by the following precepts:

> [The] appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.
>
> *Rissi v. Cappella,* 918 A.2d 131, 136 (Pa.Super. 2007) (citation omitted). "We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *Ecksel v. Orleans Const. Co.,* 360 Pa.Super. 119, 519 A.2d 1021, 1028 (1987) (citation omitted).

*J.J. DeLuca Company, Inc. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa.Super. 2012). *Accord Stephan v. Waldron Electric Heating and Cooling LLC*, 100 A.3d 660, 664-65, 667 (Pa.Super. 2014) (citations omitted); *McEwing, supra* at 646 (citations omitted).

In Blue Haven's first and third issues on appeal, Blue Haven argues that this court committed an abuse of discretion or error of law by not

presented." *Ruthrauff, Inc. v. Ravin, Incorporated*, 914 A.2d 880, 888 (Pa.Super. 2006) (citation omitted). "Issues of 'credibility and conflicts in evidence are for the trial court to resolve'". *Id.*; *accord Turney Media Fuel, Inc. v. Toll Brothers, Inc.*, 725 A.2d 836, 841 (Pa.Super. 1999) (citation omitted). The Superior Court's review on appeal following a bench trial is guided by the following precepts:

> [The] appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

> *Rissi v. Cappella*, 918 A.2d 131, 136 (Pa.Super. 2007) (citation omitted). "We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *Ecksel v. Orleans Const. Co.*, 360 Pa.Super. 119, 519 A.2d 1021, 1028 (1987) (citation omitted).

*J.J. DeLuca Company, Inc. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa.Super. 2012). *Accord Stephan v. Waldron Electric Heating and Cooling LLC*, 100 A.3d 660, 664-65, 667 (Pa.Super. 2014) (citations omitted); *McEwing, supra* at 646 (citations omitted).

In Blue Haven's first and third issues on appeal, Blue Haven argues that this court committed an abuse of discretion or error of law by not

entering judgment, jointly and severally, against the Garnishees. Specifically, Blue Haven claims that Appellees admitted and the "unrefuted and uncontradicted evidence" showed that the loans Skippack made to the Garnishees were "assets" and "receivables" of Skippack that were never repaid.[8] Blue Haven asserts that the undersigned should have found that the loans to shareholders listed on Skippack's tax returns in the amount of $231,573.00 were subject to execution and the court should have entered judgment against the Garnishees in the amount of $94,754.10. Blue Haven is mistaken.

"Garnishment is a 'proceeding through which a creditor collects his debt out of property of the debtor in the hands of a third party' and may be used to determine whether the garnishee owes a debt to the judgment debtor, or has property of the judgment debtor." *Garden State Standardbred Sales Company, Inc. v. Seese*, 611 A.2d 1239, 1241 (Pa.Super. 1992) (citations omitted). Pursuant to the Pennsylvania Rules of Civil Procedure, "[a] person may be a garnishee and shall be deemed to have possession of property of the defendant if the person owes a debt to the defendant" or "has property of the defendant in his or her custody, possession or control". Pa.R.C.P. 3101(b)(1)-(2). The service of a writ of execution is governed by Rule 3111, which provides in part:

---

[8] For example, in its Motion for Judgment, Appellant points to Mr. Sherman's deposition testimony claiming an admission that the "loans to shareholders" were "an asset" of the corporation. The actual testimony by Mr. Sherman reads: "An asset is a better term, all it is a reclassification of a distribution." (Motion, filed 5/25/12, at 7).

> Service of the writ upon the garnishee shall attach all property of the defendant which may be attached under these rules which is in the possession of the garnishee. It shall also attach all property of the defendant which may be attached under these rules and which comes into the garnishee's possession thereafter until judgment against the garnishee even though no such property of the defendant was in the garnishee's possession at the time of service.

Pa.R.C.P. 3111(b).

The plaintiff creditor may take testimony or serve interrogatories seeking discovery in aid of execution. Pa.R.C.P. 3117. The plaintiff creditor may also invoke a court's assistance under Rule 3118 to maintain the status *quo*. *See* Pa.R.C.P. 3118. As will be addressed in more detail below, "[o]nly property the title to which is clearly in the judgment-debtor is subject to the terms of [Rule 3118]." *Greater Valley Terminal Corporation v. P.J. Goodman*, 415 Pa. 1, 5, 202 A.2d 89, 92 (1964). "If the garnishee owes the judgment debtor nothing or has in his possession no money or property belonging to the latter, the attachment fails." *Folmar v. Shaffer*, 332 A.2d 821, 823 (Pa.Super. 1974) (citations omitted).

The procedure for serving interrogatories on a garnishee is prescribed by Rule 3144. *See* Pa.R.C.P. 3144. Rule 3145 provides that the procedure between the plaintiff and the garnishee shall be the same as though the interrogatories served in aid of execution were a complaint and the garnishee's answer were an answer in a civil action as far as practicable. Pa.R.C.P. 3145. However, it is important to note "[t]he interrogatories are in no proper sense a pleading and neither Pa.R.C.P.

15

3145(a) nor any of the other rules convert them into a complaint." *Jennison v. Aacher*, 193 A.2d 769, 773 (Pa.Super. 1963). "They are treated as a complaint only 'as far as practicable.'" *Id.* The Legislature has included the phrase "as far as practicable" in Pa.R.C.P. 3145 to emphasize the basic difference between a proceeding to discover assets for collecting a judgment and a pleading to commence an action. *Hanchey v. Elliott Truck Brokerage Co.*, 421 Pa. 131, 134, 218 A.2d 743, 745 (1966).

Should a court find **property of the defendant** judgment-debtor to be in a garnishee's possession upon pleadings or after a trial, the court may then enter judgment for the plaintiff. Pa.R.C.P. 3147 (emphasis added). Again, this applies only to property the title to which is clearly in the defendant judgment-debtor. *Greater Valley, supra.*

Instantly, Blue Haven served Interrogatories in Attachment and, subsequently, Amended Interrogatories in Attachment inquiring into Skippack's distributions in 2006, the \$464,568.92 in distributions in 2008, the \$231,573.00 in "loans to shareholders", Skippack's tax returns from 2008 through 2010, and whether any of the Garnishees were in possession of any assets of or owed any money to Skippack at the time of service of the writs or thereafter. The Garnishees each provided their answers denying having owed any money to or being in possession of any assets of Skippack at the time of service of the writs or thereafter.

According to Skippack's 2010 tax return, Skippack reclassified the "loans to shareholders" as a "distribution" to shareholders in 2010. Regardless of whether they were actual assets of Skippack or simply a reclassification for tax reporting purposes only, the "loans to shareholders" were not Skippack's property on August 19, 2011, when the Montgomery County Sheriff's Department served the writs of execution on the Garnishees. Both experts confirmed this at trial. When asked how much money the Garnishees owed Skippack on the day Blue Haven's writ of execution was served, Mr. Bassman, Blue Haven's expert, replied "nothing". (N.T. at 70). Pursuant to the relevant Rules of Civil Procedure and the case law interpreting those rules, and based on the evidence presented at trial, this court found that the Garnishees owed no money to and possessed no property of Skippack subject to execution when the Montgomery County Sheriff's Department served the writs of execution on August 19, 2011, or thereafter. Accordingly, Blue Haven's first and third issues are without merit.

In Blue Haven's second, fourth and fifth issues on appeal, Blue Haven challenges this court's determination that it lacked authority to adjudicate a claim of conflicting rights to property and alleged fraudulent transfers from Skippack to the Garnishees. Specifically, Blue Haven asserts that the court should have found that Skippack fraudulently transferred $464,568.00 to the Garnishes because it stripped Skippack of

17

any assets. Blue Haven also proffers that the court had the authority to reach the allegations of fraud because Appellees had their "independent full dress" and "plenary" trial on the merits. Therefore, Blue Haven contends that the court erred in failing to find that the "writing off" of loans to shareholders in 2010 constituted fraudulent conveyances. Blue Haven's claims are unavailing.

As it pertains to these particular claims, the seminal and controlling case is *Greater Valley Terminal Corporation v. P.J. Goodman*, 415 Pa. 1, 202 A.2d 89 (1964). There, the Pennsylvania Supreme Court held that Rule 3118 does not authorize the voiding of fraudulent transfers. Rather, "Rule 3118 authorizes summary proceedings in aid of execution for the purpose of maintaining the status quo as to the judgement-debtor's property and it may be used **only** for that purpose." *Id.* at 8, 202 A.2d at 94 (emphasis added); *accord Chadwin v. Krouse*, 386 A.2d 33, 37 (Pa.Super. 1978) The *Greater Valley* Court explained:

> [P]roceedings brought to void a fraudulent transfer of necessity involve an adjudication of title to the property in question, and, if such a transfer is found to have taken place, a voiding of title in the transferee and a revesting of title in the debtor. This involves a change in the status quo which the first five paragraphs of Rule 3118 clearly do not contemplate. Only property the title to which is clearly in the judgment-debtor is subject to the terms of those paragraphs.

*Id.* at 5, 202 A.2d at 92.

The Court then determined that title to property cannot be properly adjudicated under the summary procedures contemplated by Rule 3118.

18

*Id.* at 6, 202 A.2d at 93. The Court opined, rather, the parties must litigate their rights in a "plenary action appropriate for this purpose" otherwise defendants would be deprived of the attendant safeguards. *Id.* ["E]ven if the proceedings [in the trial court] were conducted in a manner resembling a 'full-dress' equity proceeding, this would not cure the improper use of Rule 3118." *Id.* at 7, 202 A.2d at 94. The *Greater Valley* Court specifically admonished the bench and bar as follows:

> In the absence of a waiver, a court cannot merely by ignoring the terms of a rule or statute and by following procedures not authorized therein, adjudicate issues which are not properly determined under the procedures authorized by that rule or statute. On the contrary, in Bench and the Bar must in all proceedings conform to the well-established procedures laid down by the Legislature and this Court. The failure to do so can only lead to confusion in the administration of justice and deprivation of the rights of litigants in this Commonwealth.

*Id.* at 7-8, 202 A.2d at 94.

Subsequent decisions have followed the mandates of *Greater Valley, supra,* which remains the law of Pennsylvania. For example, in *Garden State Standardbred Sales Company, Inc. v. Seese,* 611 A.2d 1239 (Pa.Super. 1992), the Superior Court held that garnishment proceedings could not be used to determine whether a fraudulent conveyance by the judgment-debtor had occurred and that the trial court had correctly held that the judgment-creditor must commence a separate, equitable action. *Id.* at 1242-43 (analyzing *Greater Valley, supra*).

At trial in this matter, Blue Haven cited Pa.R.C.P. 3101(b)(4) in support of its claim that the fraudulent transfer issue can be reached in a garnishment proceeding. This section provides: "Any person may be a garnishee and shall be deemed to have possession of property of the defendant if the person .... (4) holds the legal title to **property of the defendant** whether or not in fraud of creditors". Pa.R.C.P. 3101(b)(4) (emphasis added). This is the identical language cited in *Greater Valley, supra*, which the Court found "clearly indicative" of the intent that Rule 3118 is to be used solely to maintain the status quo and not to litigate title to the property in question in the hands of a third party. *See id.* at 5, 202 A.2d at 92. *See also Kaye v. Mutschler*, 39 Pa. D.& C.4th 449, 453 n.1 (Allegheny Cty. 1999) (Wettick, J.) (citing *Garden State, supra*, to explain garnishment proceedings cannot be used to invalidate transfers from the judgment debtor to a third party; instead the judgment creditor's remedy would be an equity action to set aside the conveyance).

Blue Haven also relies on *Continental Bank v. Berman*, 25 Phila.Co.Rptr. 80, 1992 WL 1071445 (Phila. Cty. 1992) for the proposition that "a fraudulent transfer claim can be brought within the context of a garnishment proceeding where, as here, the litigants are afforded the safeguards of a full hearing." (Brief in the Form of Proposed Findings of Fact, Discussion and Conclusions of Law at 12; Plaintiff's Post-Trial Motions to this Court's Decision filed 11/24/15, at 2). Blue Haven

20

misinterprets the trial court's conclusions and holding in *Continental Bank, supra*, and Blue Haven's reliance is misplaced.[9] There, plaintiff Continental Bank attempted to collect a confessed judgment against defendant Berman. After being unable to recover, Continental Bank filed a motion to set aside fraudulent conveyances pursuant to the Pennsylvania Uniform Fraudulent Conveyance Act (then 39 P.S. § 351, *et seq.*). Defendant Berman objected, arguing that the plaintiff had to commence a new lawsuit by filing a separate complaint with a new docket number. The trial court disagreed, explaining that *Greater Valley* "does not suggest a rigid rule requiring the institution of a separate **lawsuit**." *Continental Bank, supra* at 85 (emphasis added). Instead, the trial judge determined that a motion to set aside an allegedly fraudulent conveyance under the Act is an equitable proceeding which comports with the holding of *Greater Valley*. *Continental Bank, supra*. The trial court reasoned as follows:

> Since a fraudulent conveyance proceeding is an equitable proceeding, the court, in the exercise of its equitable powers, will treat Continental's motion as a complaint and permit Berman to respond to it as if it were a complaint. This means Berman **will have the opportunity to raise affirmative defenses, request a jury trial and otherwise avail himself of the Pennsylvania Rules of Civil Procedure applicable to an action in equity**.

---

[9] The Superior Court later quashed the appeal in *Continental Bank, supra*. *See* 635 A.2d 210 (Table).

21

*Id.* at 89 (internal citation omitted) (emphasis added).[10]

First and foremost, to equate what happened procedurally in *Continental Bank* with the procedure followed by Blue Haven in this case is disingenuous at best.[11] Blue Haven never filed a motion to set aside fraudulent conveyances as did the plaintiff in *Continental Bank, supra.* In fact, the first time of record before this court that Blue Haven raises the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S.A. § 5104[12], is in its brief in the Form of Proposed Findings of Fact, Discussion and Conclusions of Law, at 13, filed after the bench trial. The decision in *Continental Bank* is consistent with the mandates *Greater Valley, supra* and does not support a different conclusion that the one reached in the instant matter.

---

[10] Notably, in footnote 1 of the decision, the trial court declined to address the plaintiff's motion seeking supplemental relief in aid of execution pursuant to Pa.R.C.P. 3118, suggesting to this court that the plaintiff's motion to set aside fraudulent conveyances was not filed as part of garnishment proceedings under Rule 3118. *Continental Bank, supra* at 83 n.1.

[11] In its brief, Appellant also cites Goodrich Amram 2d, § 3118(a):5 for the proposition "that 'an independent full dress hearing is not precluded by Rule 3118'" and may be necessary for obtaining other types of relief "such as the setting aside of a fraudulent conveyance." (Brief at 12). The court located that proposition at § 3118(a):4 under the heading of "Caution", followed by the following qualifier: "Only if all parties and interested persons waive their objections may the court determine the issue of a fraudulent transfer under the guise of a 'full dress' equity proceeding pursuant to the Rule." In this case, Appellees did not waive their objections. Goodrich Amram 2d specifically lays out the "scope and purpose of supplemental relief" as well as the "necessity of notice and hearing" in Sections 3118(a):2 and 3118(a):4.

[12] In its brief, Appellant erroneously cited the provision of the Pennsylvania Uniform Fraudulent Transfer Act as 12 Pa. C.S.A. §1501.

22

Blue Haven also equates a full plenary hearing such as what occurred before the undersigned with the "full plenary proceedings" envisioned and approved in *Greater Valley, supra* and *Garden State, supra.* Blue Haven asks this court to proceed in the same manner as that done by the trial court in *Greater Valley, supra,* only for the *Greater Valley* trial court to be reversed and admonished. For a court to properly adjudicate who owns property in a third party's possession and whether the property has been fraudulently transferred, a plaintiff must institute an equitable action (such as a motion to set aside a fraudulent transfer under the Pennsylvania Uniform Fraudulent Transfer Act) or a proceeding under the Sheriff's Interpleader Act (with a right to a jury trial) or an ejectment action with a full hearing. *Greater Valley, supra; Garden State, supra; Continental Bank, supra.* Whichever course is chosen, the proceedings must include the necessary safeguards for the defendants. *Greater Valley, supra.*

In this case, Blue Haven filed a Rule 3147 Motion for Judgment after receiving the Garnishees' responses to the Interrogatories in Attachment, copies of tax returns, bank statements and journal entries, and taking depositions. Appellees objected to proceeding to a trial supplementary to execution under Rule 3118. By proceeding under Rule 3118, and without providing Appellees the right to assert affirmative defenses, a jury trial, motion practice and any other rights pursuant to the

Pennsylvania Rules of Civil Procedure to which they are entitled, Blue Haven put the court in an untenable position with limited authority on March 6, 2014. Hence, the undersigned declined to reach Blue Haven's procedurally improper claims of fraudulent conveyance.

In Blue Haven's Post-Trial Motions, it proffers as follows:

> Here, any "pending resolution of certain procedural issues" presented by *Greater Valley*, to which Judge Corso made reference, were resolved by the Case Management Order signed by Judge Murphy, by agreement, following a Pa.R.C.P. 212.3 conference before Judge Murphy, whereby the garnishment interrogatories would be amended to specifically provide notice of fraudulent transfers alleged by [Blue Haven], and to afford {Skippack] and the [Garnishees] a full, plenary trial on the merits of [Blue Haven's] fraudulent transfer allegations."

(Blue Haven's Post-Trial Motions to this Court's Decision, filed 11/24/14, at 3).

However, a review of the Amended Interrogatories in Attachment reveals that there is no mechanism provided which converted the interrogatories into a complaint in equity. Indeed, there is no mention of fraud, a fraudulent conveyance or any factual averments transforming the garnishment action into a full, plenary equity proceeding. Further, contrary to Blue Haven's emphasis on the treatment of interrogatories as a complaint under Rule 3145 in support of its position, this argument has been soundly rejected by our appellate courts. *See Hanchey, supra* at 134, 218 A.2d at 745; *Jennison, supra* at 773.

24

Therefore, for the reasons articulated above, this court concluded that there had not been the "independent full dress" or "plenary" proceedings with all the attendant rights provided to Appellees on the fraudulent transfer claim. Accordingly, the undersigned had no authority to determine who owned the property allegedly in the Garnishees' possession and whether or not Skippack had fraudulently transferred that property to the Garnishees. [13]

## V.  CONCLUSION

Based upon the reasoning set forth herein, the undersigned respectfully requests that the Superior Court affirm the judgment.

BY THE COURT:

THOMAS P. ROGERS, J.

Copies of the above Opinion
sent on 7/15/2016 to the following:
**By First-Class Mail:**
Mark R. Himsworth, Esquire, Counsel for Appellant,
 Blue Haven Pools
Joseph A. Caprara, Esquire, Counsel for Appellees,
 Skippack Building Corporation and BS Trust, EB Trust,
 JE Trust and SJ Trust

Marian McDonnell

Judicial Secretary

---

[13]Even if Judge Corso had transformed Appellant's Motion for Judgment into a Motion to Set Aside Fraudulent Conveyances, which the record before this Court does not support, based upon the evidence adduced at trial, the undersigned opines that Appellant did not meet its burden to show that the loans to shareholders constituted fraudulent transfers.